IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| John Doe,<br><br>*Plaintiff*,<br><br>vs.<br><br>THE BOARD OF EDUCATION OF MONTGOMERY COUNTY; MONTGOMERY COUNTY PUBLIC SCHOOLS; BRENDA WOLFF, in her Official Capacity as President of the Board of Education of Montgomery County; KARLA SILVESTRE, in her Official Capacity as Vice-President of the Board of Education of Montgomery County; JUDITH DOCCA, in her Official Capacity as Member of the Board of Education of Montgomery County; SHEBRA EVANS, in her Official Capacity as Member of the Board of Education of Montgomery County; LYNNE HARRIS, in her Official Capacity as Member of the Board of Education of Montgomery County; REBECCA SMONDROWSKI, in her Official Capacity as Member of the Board of Education of Montgomery County; DR. MONIFA MCKNIGHT, in her Official Capacity as Interim Superintendent of Montgomery County Public Schools; and JOHN ROE 1-10, in their Official Capacity as employees of the Board of Education of Montgomery County,<br><br>*Defendants*. | Case No.:<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff John Doe, proceeding under a pseudonym,[1] complains of the above-named Defendants as follows:

## NATURE OF THE ACTION

1.      This action seeks emergency temporary, preliminary, and permanent injunctive and declaratory relief from a Resolution passed by the Board of Education of Montgomery County, Maryland (the "Board"), requiring all employees of Montgomery County Public Schools ("MCPS")[2] to be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").

2.      The Vaccine Mandate, which was passed on September 9, 2021, provides that MCPS employees must, by September 30, 2021, provide verification that they have received at least the first shot of a COVID-19 vaccination and, by October 29, 2021, provide verification that they have received the second shot of a COVID-19 vaccination.

3.      The Vaccine Mandate contains an exemption from its requirements for MCPS employees based on "medical reason[s]," but it does not contain an exemption for MCPS employees based on their sincerely held religious beliefs.

---

[1] Doe will file a separate motion seeking leave to proceed under a pseudonym.

[2] The Board and MCPS are often colloquially referred to as separate entities, with the "Board" referring to the elected body that constitutes the school board itself and "MCPS" referring to the entity that employs the MCPS teachers and staff.  It appears, however, that the legal name of Doe's employer here is the "Board of Education of Montgomery County" and that "MCPS" is simply an informal way of referring to the Board.  *See* Maryland Code, Education Article § 3-104(a) ("Each county board is a body politic and corporate by the name of the Board of Education of …… County").

For the sake of clarity, Doe will adopt the convention of referring to the elected body as the "Board" and the employing entity as "MCPS," but, consistent with the above paragraph, all references to MCPS should be construed to refer to the Board, and vice versa.

By this Complaint, Doe has made a good faith effort to sue his employer under Title VII and the public officials charged with enforcing the Vaccine Mandate under 42 U.S.C. § 1983, and the Complaint should be construed as such.

4.     Doe, an administrative employee of MCPS, is an adherent of the Christian faith. He holds the sincere belief that obtaining a COVID-19 vaccination would conflict with the edicts of his religion and, therefore, that obtaining a COVID-19 vaccine would constitute a sin in the eyes of God.

5.      Accordingly, Doe sought an exemption from the Vaccine Mandate on the ground that it is prohibited by his sincerely held religious beliefs.  The Board, however, denied Doe an exemption on the ground that the Vaccine Mandate does not permit religious exemptions.  If Doe adheres to his sincerely held religious belief that obtaining a COVID-19 vaccine would be a sin, he will be terminated for failing to comply with the Vaccine Mandate.

6.     The Board's actions in passing the Vaccine Mandate, enforcing the Vaccine Mandate, refusing to grant Doe an exemption from the Vaccine Mandate based on his sincerely held religious belief, and threatening to terminate Doe for failure to comply with the Vaccine Mandate are unlawful.  Specifically, the Board's actions violate (a) the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable against the states by the Fourteenth Amendment to the United States Constitution, and enforced by 42 U.S.C. § 1983, (b) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, enforced by 42 U.S.C. § 1983 (c) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), (d) Article 36 of the Maryland Constitution, which mirrors the Free Exercise Clause of the First Amendment, (e) Article 24 of the Maryland Constitution, which mirrors the Equal Protection Clause of the Fourteenth Amendment, (f) the Maryland Fair Employment Practices Act, Maryland Code, State Gov't, § 20-601, *et seq.*, which mirrors Title VII ("FEPA") and (g) the Code of Montgomery County Regulations § 27-19, which also mirrors Title VII.

7.      Because of the Vaccine Mandate's September 30, 2021 deadline for receipt of the first shot of a COVID-19 vaccine, and based on the Board's refusal to grant Doe a religious exemption thereunder, Doe will move this Court for emergency temporary and preliminary injunctive relief.  Doe is under the immediate threat of the loss of his employment and professional standing, which will cause him irreparable harm.

8.      At this time, Doe seeks only injunctive and declaratory relief.  Doe, however, reserves the right to amend this Complaint to seek monetary damages against all potentially liable parties in the event his employment is unlawfully terminated or otherwise impaired because of his failure to comply with the Vaccine Mandate.

## JURISDICTION AND VENUE

9.      As relevant for establishing federal subject-matter jurisdiction, this action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3).  This action also arises under Title VII, 42 U.S.C. §§ 2000e-2 and 2000e(j).

10.     This Court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because, on information and belief, all Defendants are residents of Maryland.  In the alternative, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in Maryland.

12.     This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure.

13.     This Court is authorized to grant Doe's prayer for emergency temporary and preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

14.     This Court is authorized to grant Doe an award of costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k).

**THE PARTIES**
**Doe**

15.     Doe, a citizen and resident of Maryland, is a MCPS employee.  Doe is not a school teacher; rather, his job is in administration.  Doe works in an MCPS administrative building—not a school, and no students attend school in the building where Doe works—where he has a private office with a door than can be closed.  Doe's immediate co-workers, superiors, and subordinates also have private offices with doors that can be closed.

16.     Doe's job requires minimal in-person contact with other MCPS employees.  In addition, much of Doe's job can be done remotely.  Doe estimates that his job could be performed remotely 60-80% of the time.

17.     Doe rarely has in-person contact with MCPS students.  Doe estimates that he has in-person contact with MCPS students approximately one time a month, when his job requires him to visit a MCPS school.  During those visits, Doe does not ordinarily interact with students, and he does not have close contact with students.

18.     Doe has been employed by the Board for over 10 years.

19.     Doe is married and has several[3] minor children who live with him and his wife. Doe's wife, primarily, homeschools their children, although Doe's job has sufficient flexibility

---

[3] Doe is not listing his actual number of children in order to better preserve his anonymity.  More generally, the facts alleged herein—and especially Paragraphs 15-20 and 34-39—are intentionally non-specific where possible for the same reason.

that he is able to participate in their education, rearing, and religious upbringing.  Doe's job with the Board is a vital source of income for his family, comprising over 2/3 of his family's budget. Doe and his family also have health insurance through his employment with MCPS.

20.     Doe plans to continue working for MCPS until he retires.  If his employment were to be terminated now, he would lose his salary and benefits, including but not limited to his health insurance, his retirement pension will greatly reduced, and he will lose his access to other retirement benefits, including but not limited to subsidized retirement health insurance.

21.     In addition to these monetary consequences, if Doe's employment were to be terminated now, he would suffer emotional and reputational harm as set forth in more detail herein.

**Defendants**

22.     The Board is a corporate body, created by Maryland statutory law, to operate and oversee the Montgomery County public elementary and secondary school system.  Maryland Code, Education Article §§ 3–103 and 3-104(a). The Board "[m]ay sue and be sued."  Maryland Code, Education Article § 3–104(b).  The Board is a state actor and is thus subject to the United States Constitution.

23.     The Board conducts its meeting in Montgomery County, Maryland.

24.     In the Fall of 2020, MCPS was comprised of approximately 209 schools that were attended by approximately 160,000 students.  There are approximately 25,000 MCPS employees, approximately 14,000 of whom were teachers and approximately 11,000 of whom were staff.  The Montgomery County public school district is the largest public school district in Maryland and routinely in the top twenty largest public school district in the United States.  *See* https://www.montgomeryschoolsmd.org/uploadedFiles/about/homepage/At%20a%20Glance202 0-21.pdf, last accessed on September 26, 2021.

25.    For the fiscal year 2021, MCPS's budget was $2.756 billion dollars.    *See*

https://www.montgomeryschoolsmd.org/uploadedFiles/departments/budget/fy2021/FY22_Adopt

ed_OperatingBudget_WholeBook.pdf, last visited on September 26, 2021.    *Id.*

26.    Brenda Wolff is the President of the Board.    On information and belief, Ms. Wolff

is a citizen and resident of Montgomery County, Maryland.    Ms. Wolff regularly attends Board

meetings, and she attended the Board meeting where the Resolution adopting the Vaccine Mandate

was passed.    At all relevant times and in all relevant respects as alleged herein, Ms. Wolff was

acting under color of state law.    At this time, Ms. Wolff is sued in her Official Capacity only.

27.    Karla Silvestre is the Vice-President of the Board.    On information and belief, Ms.

Silvestre is a citizen and resident of Montgomery County, Maryland.    Ms. Silvestre regularly

attends Board meetings, and she attended the Board meeting where the Resolution adopting the

Vaccine Mandate was passed.    At all relevant times and in all relevant respects as alleged herein,

Ms. Silvestre was acting under color of state law.    At this time, Ms. Silvestre is sued in her Official

Capacity only.

28.    Judith Docca is a Member of the Board.    On information and belief, Ms. Docca is

a citizen and resident of Montgomery County, Maryland.    Ms. Docca regularly attends Board

meetings, and she attended the Board meeting where the Resolution adopting the Vaccine Mandate

was passed.    At all relevant times and in all relevant respects as alleged herein, Ms. Docca was

acting under color of state law.    At this time, Ms. Docca is sued in her Official Capacity only.

29.    Shebra Evans is a Member of the Board.    On information and belief, Ms. Evans is

a citizen and resident of Montgomery County, Maryland.    Ms. Evans regularly attends Board

meetings, and she attended the Board meeting where the Resolution adopting the Vaccine Mandate

was passed.  At all relevant times and in all relevant respects as alleged herein, Ms. Evans was acting under color of state law.  At this time, Ms. Silvestre is sued in her Official Capacity only.

30.     Lynne Harris is a Member of the Board.  On information and belief, Ms. Harris is a citizen and resident of Montgomery County, Maryland.  Ms. Harris regularly attends Board meetings, and she attended the Board meeting where the Resolution adopting the Vaccine Mandate was passed.  At all relevant times and in all relevant respects as alleged herein, Ms. Harris was acting under color of state law.  At this time, Ms. Harris is sued in her Official Capacity only.

31.     Rebecca Smondrowski is a Member of the Board.  On information and belief, Ms. Smondrowski is a citizen and resident of Montgomery County, Maryland.  Ms. Smondrowski regularly attends Board meetings, and she attended the Board meeting where the Resolution adopting the Vaccine Mandate was passed.  At all relevant times and in all relevant respects as alleged herein, Ms. Smondrowski was acting under color of state law.  At this time, Ms. Smondrowski is sued in her Official Capacity only.

32.     Dr. Monifa B. McKnight is the Interim Superintendent of Montgomery County Public Schools.  On information and belief, in that role, Dr. McKnight is the MCPS employee who is charged with implementing the Vaccine Mandate.  On information and belief, Dr. McKnight is a citizen and resident of Montgomery County, Maryland.  Dr. McKnight regularly attends Board meetings, and she attended the Board meeting where the Resolution adopting the Vaccine Mandate was passed.  At all relevant times and in all relevant respects as alleged herein, Dr. McKnight was acting under color of state law.  At this time, Dr. McKnight is sued in her Official Capacity only.

33.     John Roe 1-10 are other MCPS employees who are charged with implementing the Vaccine Mandate. At all relevant times and in all relevant respects as alleged herein, John Roe 1-

10 were acting under color of state law.  At this time, John Roe 1-10 are sued in their Official Capacities only.

## BACKGROUND
### Doe's Sincerely Held Religious Beliefs

34.     Doe is a devout Christian.  He is a member of a local church, which he attends twice a week, and has attended for over 20 years.  He teaches Bible study and children's Sunday School, which he has taught for over 10 years.  He has served as an usher and participated in other church ministries for both children and adults.  He is faithful in studying the Bible and teaching it to his own children.

35.     Doe endeavors to live his life in accordance with God's will for him.

36.     Doe seeks to determine God's will for his life and his family through daily Bible study and prayer.

37.     Doe sincerely believes that he is to "offer [his] bod[y] as [a] living sacrifice, holy and pleasing to God" as his spiritual act of worship and to not be "conform[ed to the values] of this world, but [to] be transformed by the renewing of [his] mind [so that he] will be able to test and approve what God's will is" for him.  Romans 12:1-2.

38.     Doe believes that because he has placed his faith and trust in God alone, the Holy Spirit lives within him leading him and imparting wisdom and discernment to make decisions. Romans 8:9-21, Ephesians 1:13-14.

39.     Doe has sought the Lord for wisdom on this vaccine to determine God's will, and sincerely believes that it is God's will that he not receive a COVID-19 vaccine.

### The Vaccine Mandate

40.     On March 16, 2020, in response to the initial wave of the coronavirus pandemic, the Board shut down the Montgomery County public schools to in-person instruction.  *See*

https://www.montgomeryschoolsmd.org/departments/publicinfo/community/school-year-2019-2020/coronavirus-update-20200312.html, last visited on September 26, 2021.  In addition, the Board shut down Montgomery County public schools' administrative offices to in-person attendance.  At that time Doe, like many his administrative co-workers, set up a home office and began performing his job from home.  Doe returned to in-person attendance at his job in June 2020 and has been attending his job in-person since that time.  Upon returning, Doe was required to wear a mask when at work.  Doe purchases masks on a regular basis and complies with this requirement.  To the best of his knowledge, Doe has not had COVID-19.

41.     On March 1, 2021, almost a year after the initial shut-down, the Board began a phased reopening that involved a small group of students returning to in-person instruction.  *See* https://www.montgomeryschoolsmd.org/reopening/timeline.aspx, last visited on September 26, 2021.  The phased reopening was completed, and the schools fully reopened, on April 19, 2021.  *See*       https://bethesdamagazine.com/bethesda-beat/schools/mcps-accelerates-last-phase-of-reopening-by-one-week/, last visited on September 26, 2021.  At that time, various measures were put in place to mitigate the spread of COVID-19, including a mask requirement for students and employees, but there was no requirement that MCPS employees be vaccinated.    *See* https://www.wusa9.com/article/news/local/outreach/back-to-school/montgomery-county-schools-require-masks-students-teachers/65-79cea7d9-fdbb-421e-b4e6-eee860932655,       last visited on September 26, 2021.

42.     On or about May 26, 2021, the Board announced that it had decided to keep the Montgomery County public schools open to in-person instruction for the 2021-22 school year, again, with mitigation measures, including a mask requirement for students and employees.  At that time, there was no requirement that MCPS students or employees be vaccinated.  *See*

https://www.montgomeryschoolsmd.org/departments/publicinfo/community/school-year-2020-2021/Community-Update-20210526.html, last visited on September 26, 2021.

43.     On August 13, 2021, the Board released the 2021-22 MCPS Reopening Guide, which, among other things, explained the measures that would be put in place to mitigate the spread of COVID-19.  These measures included:

- A requirement that students, staff, and visitors be required to wear face masks in all MCPS school buildings, buses, and facilities.

- Ensuring that school facilities will be regularly sanitized, equipped with cleaning supplies, ventilated, and have their air quality monitored.

- A requirement that pre-kindergarten through 6th grade students be randomly tested for COVID-19 (because these students are not currently eligible to receive a COVID-19 vaccine).

- Requiring and reminding students and staff that they must stay home if they are experiencing symptoms of COVID-19.

- Contact tracing for students who test positive for COVID-19.

- Providing opportunities and encouragement for individuals to engage in proactive preventive measures, such as handwashing.

*See* August 13, 2021 MCPS 2021-22 Reopening Guide at 4, 8-9, https://www.montgomeryschoolsmd.org/reopening2021/guides/MCPS-Fall-Recovery-Guide-FINAL.pdf, last visited September 26, 2021.

44.     As with the prior reopening plans, under the August 13, 2021 MCPS 2021-22 Reopening Guide, MCPS students and employees were not required to receive a COVID-19 vaccination.  Instead, vaccination for students and employees was "promoted," *id.* at 8, and students and employees were required to either "participate in weekly COVID-19 testing" or "submit proof of vaccination" *id.* at 4, 8-9

45.     On September 9, 2021, however, the Board drastically changed course from its August 13, 2021 "test or vaccination" policy for employees.  Instead, the Board passed a Resolution, by unanimous vote of its officers and members, adopting the Vaccine Mandate.

46.     In relevant part, the Vaccine Mandate observes, in prefatory language, that the Board "is committed to providing students with access to rich and rigorous educational opportunities while safeguarding the health and safety of our students, staff, and community." Vaccine                    Mandate                    at                    1, https://go.boarddocs.com/mabe/mcpsmd/Board.nsf/files/C6QJYL4F77A1/$file/20210909%20COVID-19%20Vaccine%20Mandate_ADOPTED.pdf, last visited on September 26, 2021.  Further, it provides that "[t]here are no vaccines currently available for children under 12[, l]eaving our youngest learners . . . dependent upon the actions taken by the adult community." *Id.*

47.     The operative language of the Vaccine Mandate provides, in full:

That all staff employed by the Montgomery County Public Schools (MCPS) provide verification that they have received at least the first COVID-19 vaccination by September 30, 2021, and verification of the second shot be submitted no later than October 29, 2021 (as applicable), unless staff request an exemption based on a medical reason documented by a medical doctor. If a medical exemption is granted, the employee must submit to regular COVID-19 testing as required by MCPS.

*Id.*

48.     As is manifest from the text of the Vaccine Mandate, it allows employees to apply for an exemption for "medical reasons."  It does not, however, contain an exemption based on employees' sincerely held religious beliefs.  Doe does not have a medical condition that would entitle him to an exemption under the Vaccine Mandate.

49.     By its terms, the Vaccine Mandate does not apply to MCPS students, and the Board does not otherwise require the general student population to receive the COVID-19 vaccine.  The Board has concluded, however, that only those students who wish to participate in MCPS sports

in the Winter of 2021 and the Fall of 2022 must receive a COVID-19 vaccine. *See* https://www.montgomeryschoolsmd.org/departments/publicinfo/community/school-year-2021-2022/boereview-20210909.html, last visited September 26, 2021.

50.    On or about September 15, 2021, the Board issued a press release regarding the Vaccine Mandate, which stated that employee "vaccination or authorized medical exemption [is] a condition of employment. Failure to comply will result in progressive discipline up to and including termination from MCPS." *See* MCPS Press Release, https://news.montgomeryschoolsmd.org/staff-bulletin/covid-19-vaccinations-required-for-all-mcps-employees/, last accessed September 26, 2021.

51.    On or about September 22, 2021, the Board announced that, MCPS had received a substantial number of rapid (antigen) tests, and these tests would be used when a student exhibits COVID-19 symptoms on-site during the school day. *See* https://news.montgomeryschoolsmd.org/staff-bulletin/covid-19-rapid-testing-begins-quarantine-policy-adjusted/, last accessed on September 26, 2021.

**Doe is Denied an Exemption Despite the Availability of Alternate Safety Measures**

52.    On September 21, 2021, Doe sent an email to a proper MCPS employee asking for a description of the process for submitting a religious exemption.  The MCPS employee responded that MCPS does not provide  any religious exemptions in any matter, only medical.

53.    On September 24, 2021, Doe sent an email to a proper MCPS employee, requesting a religious exemption and accommodation from the Vaccine Mandate.

54.    To date, Doe has not received a response to his September 24, 2021 email.

55.    Doe is ready, willing, and able to comply with all reasonable health and safety requirements to facilitate a religious exemption and accommodation from the Vaccine Mandate.

56.     Specifically, Doe has been complying and is willing to continue complying with all of the mitigation measures that are currently required by the Board under the August 13, 2021 MCPS 2021-22 Reopening Guide, including but not limited to weekly testing, wearing a mask, washing his hands, staying home if sick, *etc.*

57.     In addition, Doe is willing to take reasonable additional measures, including but not limiting to working from home, closing his office door when working from his office, and otherwise social distancing from other MCPS employees.

58.     On information and belief, other MCPS employees have religious objections to the Vaccine Mandate and would apply for a religious exemption if one were available.

59.     Despite all of this, the Board will terminate Doe's employment if Doe does not obtain the first shot of a COVID-19 vaccine by September 30, 2021, in accordance with the Vaccine Mandate.

60.     Doe's failure to receive a COVID-19 vaccine will result in the termination of his employment, which will be devastating to Doe and his family.

61.     If Doe is terminated, in addition to the monetary harm that would befall him (as already discussed), Doe has the legitimate fear that he will not be able find another job in the education sector that gives him the same flexibility that he has in his current job to participate in the education, rearing, and religious upbringing of his children.

62.     Further, Doe will likely be required to inform potential future employers that his employment was terminated and the circumstances of his termination, which presents the very real possibility that Doe will be falsely labelled as "anti-vax."  In the present politically charged climate

in Montgomery County[4] and our nation more generally, this will result in a professional stigma, which will make Doe's finding future employment unduly difficult.

63.     For the reasons set forth herein, if Doe is terminated, it would cause him severe monetary harm, severe tremendous stress, anxiety, emotional distress, anguish, worry, and fright, and reputational harm amounting to a personal and professional stigma.

64.     In the absence of injunctive relief from the Court, Doe will suffer imminent and irreparable harm to his occupation, reputation, professional standing, and emotional and mental well-being.

**CAUSES OF ACTION**
**COUNTS I and II**
**VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983) AND VIOLATION OF ARTICLE 36 OF THE MARYLAND CONSTITUTION**

---

[4] For example, in the Montgomery County Update from September 2, 2021, the County Executive had this to say about people who had not yet received a COVID-19 vaccine:

> The root cause of this surge of cases are the unvaccinated adults who simply refuse to be responsible for the health impacts that they have on both vaccinated and unvaccinated people. ***They are the source of these infections*** – vaccinated people do not spontaneously develop COVID-19 – they get it from exposure to unvaccinated people, and to a lesser degree, to vaccinated people who unknowingly have become infected by an unvaccinated person. ***All the COVID-19 cases in a chain[] begin with an unvaccinated person at the beginning of the chain***.

> It is unfair that those unvaccinated individuals seem to assert that they have the right to be unvaccinated but no responsibility in how they handle that choice. They are putting the almost 90 percent of you who got vaccinated at risk and limiting your ability to enjoy doing things in a safe environment. ***This view of the world is just wrong and unjust***.

*See* https://montgomerycomd.blogspot.com/2021/09/message-from-county-executive.html, last visited on September 26, 2021 (emphasis added).

65.     Doe hereby realleges and adopts each and every allegation of this Complaint as if fully set forth herein.

66.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the Board from abridging Doe's right to the free exercise of religion.

67.     Article 36 of the Maryland Constitution similarly prohibits the Board from abridging Doe's right to free exercise of religion.

68.     Doe's sincerely held religious beliefs compel him to refuse vaccination.

69.     The Board will terminate Doe's employment if Doe does not obtain the first shot of a COVID-19 vaccine by September 30, 2021, in accordance with the Vaccine Mandate.

70.     The Vaccine Mandate, on its face and as applied, violates the First Amendment and Article 36 because it does not contain a methodology for MCPS employees to obtain religious exemptions and because the Board has denied Doe's request for a religious exemption from the Vaccine Mandate based on his sincerely held religious beliefs.

71.     The Vaccine Mandate, on its face and as applied, substantially burdens Doe's sincerely held religious beliefs because, under it, Doe's continued employment, and the benefits arising therefrom, are conditioned upon Doe violating his sincerely held religious beliefs.  The Vaccine Mandate, on its face and as applied, impermissibly requires Doe to choose between, on the one hand, abandoning his sincerely held religious beliefs and remaining employed or, on the other hand, maintaining his sincerely held religious beliefs and having his employment terminated, and the consequent irreparable harmed caused thereby.

72.     The Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable because, on information and belief, its failure to contain a religious exemption was the

product of a discriminatory animus toward religion.  The Vaccine Mandate, on its face and as applied, thus targets religious beliefs for disparate and discriminatory treatment.

73.     The Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable because it creates a methodology for MCPS employees to obtain exemptions based on factors other than their sincerely held religious beliefs but does not create such a system for sincerely held religious beliefs.

74.     The Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable because it of its underinclusiveness.

75.     The Board has no compelling, substantial, legitimate, or rational interest in the Vaccine Mandate's exclusion of exemptions for MCPS employees' sincerely held religious beliefs, especially considering that the MCPS employees who are exempted from the Vaccine Mandate for medical reasons and MCPS general student body, who are not required to be vaccinated, are no less susceptible of contracting and spreading COVID-19 (the prevention of which is the stated reason for the Board's enactment of the Vaccine Mandate) than those who would be exempted for reasons of sincerely held religious beliefs, including but not limited to Doe.

76.     The Vaccine Mandate is not narrowly tailored or the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by other protective measures that do not violate Doe's sincerely held religious beliefs, such as masking, testing, social distancing, office door closure, telework, *etc.*  In fact, some of these protective measures are already being required of unvaccinated MCPS employees who are exempted from the Vaccine Mandate for medical reasons and MPCS students.

77.     The Board has deprived Doe of his First Amendment rights under color of state law.

78.     The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Doe.  Doe has no adequate remedy at law to prevent the continuing violation of his constitutional and statutory liberties.

**COUNTS III and IV**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE**
**FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42**
**U.S.C. § 1983) AND ARTICLE 24 OF THE MARYLAND CONSTITUTION**

79.     Doe hereby realleges and adopts each and every allegation of this Complaint as if fully set forth herein.

80.     The Fourteenth Amendment to the United States Constitution guarantees Doe's right to equal protection under the law.

81.     Article 24 to the Maryland Constitution similarly guarantees Doe's right to equal protection under the law.

82.     The Vaccine Mandate, on its face and as applied, is an unconstitutional abridgment of Doe's right to equal protection, is not neutral, and specifically targets Doe's sincerely held religious beliefs for discriminatory and unequal treatment as compared with the medical exemptions favored by the Board's impermissible, anti-religious value judgment.

83.     The Vaccine Mandate, on its face and as applied, is an unconstitutional abridgement of Doe's right to equal protection because, by it, the Board treats Doe differently from similarly situated employees solely on the basis of Doe's sincerely held religious beliefs.

84.     The Vaccine Mandate, on its face and as applied, discriminates between religion and nonreligion by allowing non-religious exemptions to the Vaccine Mandate while prohibiting religious exemptions.

85.     The Vaccine Mandate, on its face and as applied, creates a system of classes and categories that improperly accommodates exemptions for employees concerned with medical exemptions while denying religious exemptions.

86.     The Board has deprived Doe of his Fourteenth Amendment rights under color of state law.

87.     The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Doe.  Doe has no adequate remedy at law to prevent the continuing violation of his constitutional and statutory liberties.

### COUNTS V, VI and VII
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (28 U.S.C. §§ 2000e-2 and 2000e(j)), THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (Maryland Code, State Gov't, § 20-601, *et seq.*), AND CODE OF MONTGOMERY COUNTY REGULATIONS § 27-19

88.     Doe hereby realleges and adopts each and every allegation of this Complaint as if fully set forth herein.

89.     The Board is an employer.

90.     The Board employs 15 or more employees and has employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

91.     Doe is an employee of the Board.[5]

92.     The Board will terminate Doe's employment if Doe does not obtain the first shot of a COVID-19 vaccine by September 30, 2021, in accordance with the Vaccine Mandate.

93.     The Vaccine Mandate, and the Board, have discriminated against Doe because of religion.

---

[5] See n.1.

94.     Doe's job performance has been and is satisfactory and will continue to be satisfactory in the future.

95.     The Board has treated other, non-religious employees more favorably than Doe.

96.     If Doe is terminated for failing to comply with the Vaccine Mandate, Doe's sincerely held religious belief will be a motivating factor in the termination of Doe's employment.

97.     The Vaccine Mandate, and the Board, have treated Doe differently than employees who are granted exemptions from the mandate on other grounds.

98.     The Vaccine Mandate, and the Board, have failed to accommodate Doe's sincerely held religious belief.

99.     Doe has a bona fide religious belief that conflicts with an employment requirement. Namely, Doe's sincerely held religious beliefs compel him not to receive a COVID-19 vaccine, a belief that conflicts with the Vaccine Mandate.

100.     Doe informed the Board that his sincerely held religious beliefs conflicted with an employment requirement and asked the Board to accommodate those beliefs, yet the Board refused to accommodate Doe.  The Board impermissibly failed to give the request the individualized consideration required under the law.

101.     Doe will be terminated if he adheres to his sincerely held religious beliefs.

102.     The Board is able to accommodate Doe's request for an accommodation from the Vaccine Mandate in the form of additional protective measures, such as masking, testing, quarantining, social distancing, *etc.*   In fact, the Board already requires vaccinated MCPS employees and unvaccinated MCPS employees who are exempted from the Vaccine Mandate for medical reasons to undergo these protective measures.

103.     These accommodations will pose no undue hardship on the Board.

104.     The Vaccine Mandate, and the Board, have classified employees in such a way that deprives or tend to deprive employees of employment opportunities or otherwise adversely affect their status as an employee because of their religion.

105.     The Vaccine Mandate, and the Board, have created a disparity between employees who are religious and those who are not.

106.     The Vaccine Mandate is not job-related and consistent with business necessity.

107.     The Vaccine Mandate requires actions that federal law forbids, which renders the Vaccine Mandate null and void.

108.     The Vaccine Mandate, and the Board, have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Doe.  Doe has no adequate remedy at law to prevent the continuing violation of his constitutional and statutory liberties.

**PRAYER FOR RELIEF**

**WHEREFORE**, Doe respectfully prays for relief as follows as to all Counts:

A.     That the Court issue a preliminary injunction pending trial restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from: (i) enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Vaccine Mandate as written, (ii) enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Vaccine Mandate without a mechanism to receive and process employee requests for religious exemptions in the same manner as requests for medical exemptions; (iii) refusing to consider, evaluate, or accept Doe's  requests for exemption from the Vaccine Mandate for his sincerely held religious beliefs; (iv) denying Doe's request for a religious exemption from the Vaccine Mandate, provided, however, that Doe will agree to abide by reasonable accommodation/mitigation provisions such

as masking, testing, symptom monitoring, and reporting; and (iv) threatening to discharge or terminate Doe from his employment, or otherwise taking any adverse action against him, for failure to receive a COVID-19 vaccine; and

B.     In the alternative, that the Court issue a temporary restraining order restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from (i) enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Vaccine Mandate and (ii) threatening to discharge and terminate Doe from his employment, or otherwise taking any adverse action against him, for failure to receive COVID-19 vaccine, until such time as the Court may resolve Doe's motion for preliminary injunction; and

C.     That the Court issue a permanent injunction upon judgment on the same terms as set forth in Paragraph A, above;

D.     That the Court render a declaratory judgment declaring that the Vaccine Mandate, both on its face and as applied by Defendants, is unconstitutional, unlawful, and unenforceable in that: (a) the Vaccine Mandate violates the Free Exercise Clause of the First Amendment to the United States Constitution and Article 36 of the Maryland Constitution; (b) the Vaccine Mandate violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Constitution; (c) the Vaccine Mandate violates Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act; and (d) Defendants entered into an unlawful conspiracy to deprive Doe of his constitutional rights;

E.     That the Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

F.      That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order;

G.      That this Court award Doe the reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988 and 2000e-5(k); and

H.      That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

　　　　　　　　　　　　　　　　　__/s/_____
　　　　　　　　　　　　　　　　　Jennifer Bland Lester
　　　　　　　　　　　　　　　　　LAW OFFICE OF JENNIFER LESTER
　　　　　　　　　　　　　　　　　17 W. Jefferson Street, Suite 100
　　　　　　　　　　　　　　　　　Rockville, Maryland 20850
　　　　　　　　　　　　　　　　　410-433-3972 (office)
　　　　　　　　　　　　　　　　　443-408-1037 (facsimile)
　　　　　　　　　　　　　　　　　jelester@earthlink.net
　　　　　　　　　　　　　　　　　*Counsel for Plaintiff John Doe*

　　　　　　　　　　　　　　　　　Joshua Wallace Dixon
　　　　　　　　　　　　　　　　　CENTER FOR AMERICAN LIBERTY
　　　　　　　　　　　　　　　　　PO Box 200942
　　　　　　　　　　　　　　　　　Pittsburgh, PA 15251-0942
　　　　　　　　　　　　　　　　　703-687-6200 (office)
　　　　　　　　　　　　　　　　　jdixon@libertycenter.org
　　　　　　　　　　　　　　　　　*Counsel for Plaintiff John Doe**

　　　　　　　　　　　　　　　　　*Motion for Admission Pro Hac Vice pending

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| John Doe, | Case No.: |
| *Plaintiff,* | |
| vs. | **VERIFIED COMPLAINT** |
| THE BOARD OF EDUCATION OF MONTGOMERY COUNTY; MONTGOMERY COUNTY PUBLIC SCHOOLS; BRENDA WOLFF, in her Official Capacity as President of the Board of Education of Montgomery County; KARLA SILVESTRE, in her Official Capacity as Vice-President of the Board of Education of Montgomery County; JUDITH DOCCA, in her Official Capacity as Member of the Board of Education of Montgomery County; SHEBRA EVANS, in her Official Capacity as Member of the Board of Education of Montgomery County; LYNNE HARRIS, in her Official Capacity as Member of the Board of Education of Montgomery County; REBECCA SMONDROWSKI, in her Official Capacity as Member of the Board of Education of Montgomery County; DR. MONIFA MCKNIGHT, in her Official Capacity as Interim Superintendent of Montgomery County Public Schools; and JOHN ROE 1-10, in their Official Capacity as employees of the Board of Education of Montgomery County, | |
| *Defendants.* | |

I hereby declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct

Executed this 28 day of September, 2021

_____
Plaintiff

24